| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 14-172 |
| MANUEL MINJAREZ | SECTION "B"(3) |

## ORDER AND REASONS

Before the Court is Petitioner Manuel Minjarez's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Rec. Doc. 97) and the Government's response (Rec. Doc. 99). For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 97) is **DENIED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In June 2014, Drug Enforcement Administration (DEA) agents began investigating methamphetamine distribution in Fresno, California. Rec. Doc. 69. Pursuant to a court-authorized Title III wiretap, DEA agents intercepted the Fresno distributer's phone calls, some of which were made to Petitioner. *Id.* During these phone calls, Petitioner asked the distributor for packages, directed the distributer where to send packages, and apprised the distributer of deliveries. *Id.*

Based on these conversations, DEA agents determined that the Fresno distributer had sent two packages to Petitioner, one on July 10, 2014, and another on July 18, 2014. *Id.* U.S. Postal Service (USPS) inspectors did not intercept the first package, but

records indicate that it weighed one pound, eleven ounces. *Id.*
USPS inspectors intercepted the second package. *Id.* The DEA crime
lab verified the package's contents as methamphetamine, which
weighed 444.7 grams and was 98.3% pure. *Id.*

In July 2014, a Texas Trooper pulled Petitioner over on
Interstate 10 for speeding. *Id.* During the stop, the Trooper found
a glass pipe and methamphetamine, resulting in Petitioner's
arrest. *Id.* In August 2014, Petitioner was charged in a three count
indictment. *See* Rec. Doc. 5. The first count was for conspiracy to
distribute and possess with intent to distribute 500 grams or more
of methamphetamine in violation of 21 U.S.C. § 841(a)(1),
(b)(1)(A); all in violation of 21 U.S.C. § 846. *See id.* at 1.
Defendant faced a statutory minimum sentence of ten years of
incarceration for Count One. *See* 21 U.S.C. § 841(b)(1)(A).
Moreover, at least when Defendant was indicted, he had "a prior
conviction for a felony drug offense" and therefore would have
faced a statutory minimum sentence of twenty years of incarceration
if the Government charged him as a second offender. *See id.* The
other two counts were for use of a communications facility in
furtherance of a drug trafficking conspiracy in violation of 21
U.S.C. § 843(b). Rec. Doc. 5 at 2. Defendant faced a statutory
minimum sentence of four years of incarceration for each of the
second and third counts. *See id.* § 843(d)(1).

Petitioner was arraigned on September 5, 2014, and entered a plea of not guilty. *See* Rec. Doc. 11. Petitioner was represented by Federal Public Defender Valerie Jusselin until Petitioner filed his notice of appeal after sentencing, when Michael Admirand (another Federal Public Defender) appears to have taken over the case. *See id.* Trial was set for November 11, 2014. *See id.* On October 22, 2014, Petitioner filed an unopposed motion to continue trial because of the volume of discovery in the case, including various recordings and transcripts of phone calls in Spanish. *See* Rec. Doc. 15. Trial was continued to January 20, 2015. *See* Rec. Doc. 16. In December 2014, Petitioner filed a second unopposed motion to continue trial because of the volume of discovery and ongoing plea negotiations. *See* Rec. Doc. 18. Trial was continued to April 6, 2015. *See* Rec. Doc. 20.

In March 2015, the Government filed a motion to continue trial because of the complexity of the case and the fact that Petitioner wanted to hire a private attorney, which had created uncertainty that interfered with resolution of the case via a plea agreement. *See* Rec. Doc. 21. A few days later, the Government filed a motion to hold a *Frye* hearing because the Government had extended a plea offer to Petitioner. *See* Rec. Doc. 22. At the pretrial conference on March 26, 2015, both motions were granted. *See* Rec. Doc. 23. Trial was reset for April 27, 2015, and the *Frye* hearing was set for April 1, 2015. *See id.*

The Government detailed the plea offer at the *Frye* hearing. Under the Government's offer, Petitioner would have pled guilty to Counts 1 and 3 of the indictment, the Government would have dismissed Count 2, and the Government would not "file a bill of information charging [Petitioner] with one prior drug felony as to Count 1 . . . ." Rec. Doc. 27; *see also* Rec. Doc. 83 at 6:8-10, 7:22-25. The plea offer established a sentencing range of ten years to life in prison instead of the twenty years to life that Petitioner would have faced if the case went to trial and the Government "establish[ed] that [Petitioner] [wa]s a second offender pursuant to 21 U.S.C. § 851." Rec. Doc. 27; *see also* Rec. Doc. 83 at 6:14-25, 7:1-5. Petitioner, after confirming he understood the offer, rejected the plea offer. *Id.* at 9:8-9, 10:22-25, 11:16-18. Just prior to the conclusion of the hearing, Defendant expressed some confusion over the plea negotiation process. *See id.* at 10:8-14. After consultation with his attorney and discussion with the undersigned, Petitioner stated that his confusion was resolved. *See id.* at 10:15-12:20.

Following the *Frye* hearing, the parties engaged in further discovery and motions practice in preparation for trial, which was again continued until June 22, 2015. *See* Rec. Doc. 54. Two pretrial motions merit special attention.[1] First, on April 13, 2015, the

---

[1] When Petitioner committed the acts that gave rise to the underlying criminal prosecution, he was on probation for two 2012 felony drug convictions in California state court. *See* Rec. Doc. 72 at 9-10. However, on May 18, 2015,

Government filed notice of its intent to use evidence from its investigation of the larger Fresno-based conspiracy to distribute methamphetamine; that conspiracy was itself the subject of an indictment in the United States District Court for the Eastern District of California. *See* Rec. Doc. 36. The Government argued that the evidence was admissible either as intrinsic evidence of Petitioner's crime or, pursuant to Federal Rule of Evidence 404(b), as extrinsic evidence of the conspiracy. *See id.* at 2-7.

Petitioner opposed the Government's attempt to introduce evidence of the Fresno conspiracy at his trial. *See* Rec. Doc. 45. Petitioner argued that evidence of the Fresno was not intrinsic to Petitioner's case because the evidence was not necessary to complete the Government's narrative of Petitioner's criminal activity. *See id.* at 1-4. Petitioner also argued that the evidence was inadmissible under Rule 404(b) because it did not tend to show Petitioner's knowledge of the conspiracy and was unfairly prejudicial. *See id.* at 4-5. The Court concluded that evidence of the Fresno conspiracy was admissible because it was intrinsic to Petitioner's crime. *See* Rec. Doc. 66 at 1-3. However, the Court ordered that the government seek leave to introduce the evidence during trial, at which point the Court would conduct any necessary

both sentences were vacated pursuant to Proposition 47, which allows those who have been convicted of certain California drug felonies to "petition for a recall of sentence." *See id.;* Cal. Penal Code § 1170.18. Both of Petitioner's convictions were resentenced as misdemeanors. *See* Rec. Doc. 72 at 9-10.

hearings outside the presence of the jury, and would give a limiting instruction if evidence of the Fresno conspiracy was ultimately admitted. *See id.* at 3-4.

Second, on April 14, 2015, Petitioner filed a motion to transfer the case to the Eastern District of California, arguing that the bulk of the evidence was located there and that the Federal Public Defenders Office in New Orleans did not have the resources to effectively litigate Petitioner's case given the Government's use of evidence from the Fresno conspiracy. *See* Rec. Doc. 38. The Government opposed the motion, arguing that Petitioner's case was based on his actions in Louisiana and most of the Government's evidence was drawn from areas outside of California. *See* Rec. Doc. 41. On April 23, 2015, the Court denied Petitioner's motion to transfer after concluding that the Eastern District of Louisiana was the most convenient location for trial and that Petitioner had long had access to the Government's evidence. *See* Rec. Doc. 57. Petitioner moved for reconsideration on the basis that there was additional wiretap evidence in the Government's possession that Petitioner did not have access to. *See* Rec. Doc. 59. The motion was denied on May 13, 2015, for failure to raise new arguments warranting reconsideration. *See* Rec. Doc. 62.

Petitioner's rearraignment was scheduled for June 10, 2015. *See* Rec. Doc. 67. At his rearraignment, Petitioner pled guilty to

all three counts of the indictment without a plea agreement. *See* Rec. Doc. 68. The Government did not file a bill of information to establish Petitioner as a second offender. *See* Rec. Doc. 85. At his sentencing hearing, Petitioner was sentenced to 151 months of imprisonment as to Count 1 and forty-eight months of imprisonment as to each Counts 2 and 3. *See* Rec. Doc. 84 at 21:10-18. Petitioner's sentences run concurrently with credit for time served. *Id.*

Petitioner then appealed to the Fifth Circuit,[2] arguing that he had "entered a conditional plea of guilty, expressly reserving his right to appeal his conviction and sentence." Appellant's Brief at 6, *United States v. Minjarez*, 667 F. App'x 144 (5th Cir. 2016) (No. 15-30845). Petitioner acknowledged that he did not comply with the formal requirements of Federal Rule of Criminal Procedure 11(a)(2), but claimed that the Rule 11 colloquy at his rearraignment hearing allowed him to retain the right to "appeal the adverse pretrial rulings that occurred prior to his guilty plea." *Id.* at 9-10. Specifically, Petitioner relies on the following exchange from the rearraignment hearing:

> **The Court:** As I understand it, in this particular case you and the government do not have any plea agreement where you waive your right to appeal your conviction and sentence here. If you would have gone to trial, that right to appeal the conviction and sentence remains with you. It also, in this particular case, remains with you

[2] Petitioner continued to be represented by the Office of the Federal Public Defender on appeal. His attorney in the Fifth Circuit, and when seeking a writ of certiorari from the United States Supreme Court, was Michael Admirand.

unless you have a plea agreement with the government to waive all of that. As I understand, counsel, there's no such agreement. Right?

**[Petitioner's Counsel]:** Yes, your Honor. There is no plea agreement, so my client is not waiving any appellate rights.

**[Government Counsel]:** That's correct your Honor.

**The Court:** So you would retain at least the right to appeal your sentence here to the Fifth Circuit Court of Appeals. Other than that particular right, do you understand the other rights that I just explained that you would be losing by pleading guilty?

**[Petitioner]:** Yes.

Reply Brief for Appellant at 4-5, *Minjarez*, 667 F. App'x 144 (quoting Rec. Doc. 85 at 21:18-22:11).

The Fifth Circuit rejected Petitioner's argument, holding that Petitioner had entered an unconditional guilty plea as evidenced by the lack of any "manifestation [at the rearraignment hearing] of any reservation of the right to appeal the [pretrial] rulings . . . ." *Minjarez*, 667 F. App'x at 145-46. The Fifth Circuit explained that mere acknowledgment "that Minjarez retained the right to appeal does not show that he retained appellate rights beyond those ordinarily afforded to any defendant who pleads guilty unconditionally without a plea agreement . . . ." *Id.* at 145.

Petitioner then sought a writ of certiorari from the United States Supreme Court on the question of "[w]hether, and under what circumstances, a defendant may enter a conditional guilty plea under [Rule] 11(a)(2) in the absence of a written plea

agreement[.]" *See* Petition for Writ of Certiorari at ii, *Minjarez v. United States*, 137 S. Ct. 406 (2016) (No. 16-6134). On October 31, 2016, the Supreme Court denied the writ.[3] *See* Rec. Doc. 95; *see also Minjarez*, 137 S. Ct. 406 (2016). In July 2017, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Rec. Doc. 97. At the Court's direction (*see* Rec. Doc. 98), the Government filed a response. Rec. Doc. 99.

## LAW AND ANALYSIS

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence when (1) the sentence violated federal law or the United States Constitution, (2) the court lacked jurisdiction to impose the sentence, (3) the sentence exceeded the maximum allowed by law, or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b). "Conclusory allegations,

---

[3] While Petitioner's petition for a writ of certiorari was pending in the United States Supreme Court, Petitioner moved for reduction of his sentence due to an amendment to the United States Sentencing Guidelines. *See* Rec. Doc. 94. The Court denied the motion because the Guidelines did not make the amendment apply retroactively, the Fifth Circuit has not applied the amendment retroactively, and the record of Petitioner's sentencing proceeding does not indicate that the amendment would impact Petitioner's sentence. *See* Rec. Doc. 96.

unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). Instead, "[a] [petitioner] is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of his allegations.'" *Id.* (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)).

After such a hearing, "[i]f the court finds that . . . there has been such a denial or infringement of constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and . . . grant a new trial . . . ." *Id.* Section 2255 motions represent a collateral attack on the federal sentence, and relief is reserved only for constitutional violations or errors that have caused "a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *see also Cox v. Warden, Fed. Det. Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990). Generally, failing to raise a claim on direct appeal bars raising that claim on collateral review unless the petitioner can show cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 166-68 (1982). Petitioner did not raise any of the claims currently before the court on direct appeal. *See* Appellant's Brief & Reply Brief, *Minjarez*, 667 F. App'x 144. However, claims of ineffective assistance of counsel may be brought in a collateral proceeding under Section 2255

regardless of whether the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503-05 (2003).

Construing Petitioner's motion broadly, he argues that his counsel provided ineffective assistance of counsel when she (1) promised him that he would receive no more than a ten-year sentence if he entered a guilty plea, (2) urged him not to object to the measurement of methamphetamine during the sentencing hearing, and (3) advised him that he would be able to challenge his guilty plea on appeal. To succeed on an ineffective assistance of counsel claim, the petitioner must demonstrate that (1) his attorney's performance was deficient and (2) the deficient performance prejudiced him in some way. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to prove either prong results in failure of the entire claim. *Id.* at 700.

Under the first prong, the petitioner must show that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 687-88. In reviewing an attorney's performance, there is a strong presumption that her conduct "falls within the wide range of reasonable professional assistance." *Id.* at 689. Reasonableness is measured against prevailing professional norms. *Id.* at 688. To demonstrate prejudice under the second prong, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A. Promise of Sentence No Longer Than Ten Years

First, Petitioner asserts that his counsel was ineffective when she allowed him to believe he would receive no more than a ten-year sentence. *See* Rec. Doc. 97 at 4-5. Petitioner essentially argues that his guilty plea was involuntary because it was induced by an unfulfilled promise. On habeas review, a guilty plea will be upheld if it was entered into knowingly, voluntarily, and intelligently. *See United States v. Hernandez*, 234 F.3d 252, 253-54 (5th Cir. 2000). A guilty plea is voluntary when the defendant is fully aware of the direct consequences of his plea, unless it was induced by an unfulfilled promise. *See Brady v. United States*, 397 U.S. 742, 755 (1970).

However, when a petitioner alleges an unfulfilled promise that is inconsistent with statements made in court, he faces a heavy burden to obtain relief under Section 2255 because formal declarations made in court carry a "strong presumption of verity" that build a robust barrier against any subsequent collateral attacks. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007) (defendant's statements that his plea was knowing

and voluntary and that he understood the rights being waived created a presumption that the plea was valid).

"Nevertheless, a [petitioner] may seek habeas relief on the basis of an alleged promise, though inconsistent with representations []he made in open court when entering h[is] guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Cervantes*, 132 F.3d at 1110. In order to receive an evidentiary hearing on the issue, the defendant must present "independent indicia of the likely merit of h[is] allegations." *See id.; see also Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Here, there is no evidence in the record to support Petitioner's allegation that his attorney offered any promise in exchange for defendant's guilty plea. Rather, Petitioner rejected a plea offer and pled guilty without a plea agreement, as evidenced by the transcripts from the *Frye* hearing and rearraignment hearing. During the *Frye* hearing, when asked whether he wanted to accept the Government's offer to plead guilty to Counts 1 and 3 in exchange for dismissing Count 2 and the Government not charging Petitioner as a second offender, Petitioner stated that he did

"not want to accept this offer." Rec. Doc. 83 at 6:8-13, 9:8-9, 10:23-25. The Government explicitly stated that if Petitioner accepted the plea offer, his sentence would range from ten years to life in prison, but that if he rejected the offer, his sentence would range from twenty years to life in prison. *Id.* at 6:14-25. At the conclusion of that hearing, the Court found that Petitioner "knowingly and voluntarily understood the plea offer from the government, and has rejected same and will be prepared to go to trial, accordingly." *Id.* at 13:4-7.

Later, during the rearraignment hearing, the Court asked Petitioner, "Are you pleading guilty, Mr. Minjarez, because you are, in fact guilty of the crimes charged in Counts 1, 2, and 3 of the indictment?" Rec. Doc. 85 at 22:21-23. Petitioner responded, "Yes." *Id.* at 22:24. Moreover, the Court then asked Petitioner, "Did anyone promise you anything to get you to plead guilty?" to which Petitioner responded, "No. No, your Honor." *Id.* at 23:12-14. Furthermore, in the beginning of the hearing, the Court impressed upon Petitioner that "[a]nything someone told you about sentencing or sentencing guidelines would not be binding upon the Court." *Id.* at 16:17-18.

Petitioner's testimony, made under oath and in open-court, clearly undermines his present conclusory allegations—not only did he reject a plea offer, but he also affirmed that no one promised him anything to induce a guilty plea, that he understood the

consequences of his guilty plea, and that he was pleading guilty voluntarily. Accordingly, Petitioner has not offered independent indicia that his plea was induced by an unfulfilled promise regarding sentencing, as would be required to merit an evidentiary hearing. *See Blackledge*, 431 U.S. at 74; *Cervantes*, 132 F.3d at 1111.

B. Objection to Methamphetamine Weight in Presentence Report

Second, Petitioner asserts that his counsel was ineffective for not objecting to the presentence report (PSR). *See* Rec. Doc. 97 at 7-8. Specifically, Petitioner argues that the PSR should have attributed only 443 grams of methamphetamine to him instead of 500 grams or more of methamphetamine. *See id*.

While it is true that DEA agents only seized one package from USPS, which contained 437.1 grams of pure methamphetamine, they also obtained USPS records that indicated another package weighing over one pound was sent to Petitioner from his supplier in California. *See* Rec. Doc. 69. Under the U.S. Sentencing Guidelines Section 2D1.1 Comment 5, if there is no drug seizure, the court must approximate the quantity of the controlled substance by considering similar transactions in controlled substances by the defendant. Accordingly, the PSR attributed 500 grams or more to Petitioner, because it reasonably took into account the weight of the unintercepted package from the supplier in California. *See* Rec. Doc. 72 at 5.

During sentencing, although a court may depart from the Sentencing Guidelines, it must at least take the Guidelines into account. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016). Additionally, in the absence of rebuttal evidence, the PSR is reliable enough for the sentencing court to rely on it at sentencing. *See United States v. Harris*, 702 F.3d 226, 230-31 (5th Cir. 2012); *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995). Furthermore, a court is not confined solely to the PSR in its sentencing decisions. *See United States v. George*, 911 F.2d 1029, 1030 (5th Cir. 1990).

In this case, this Court accepted the PSR representations and adopted the sentencing guidelines, which were both supported by information from the factual basis, which Petitioner agreed to at his rearraignment. Accordingly, Petitioner's counsel had no basis for objecting to the amounts of methamphetamine attributed to him, and she is not ineffective for not asserting a meritless objection. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

C. <u>Waiver of Appellate Rights</u>

Petitioner's third basis for challenging his conviction is that his counsel was ineffective in "advis[ing] him to accept the plea agreement as stated, then challenge the plea agreement on appeal." Rec. Doc. 97 at 9. As discussed previously, there was no plea agreement in this case. Moreover, Petitioner's third claim lacks factual detail, which makes it difficult to identify the alleged constitutional violation. Therefore, the Court interprets Petitioner's claim to either mean that (1) the entry of his guilty plea was flawed or (2) his attorney offered inaccurate advice about his appellate rights.

The propriety of Petitioner's guilty plea was addressed previously in connection with Petitioner's first ground for relief. There is no need to rehash that discussion here, other than to reiterate that the plea colloquy during Petitioner's rearraignment clearly apprised Petitioner of his constitutional rights and confirmed that his guilty plea was knowing and voluntary. *See, e.g.*, Rec. Doc. 85 at 22:21-24. Petitioner's bare statement that his attorney's advice was somehow deficient does not now throw Petitioner's plea into doubt. *See Blackledge*, 431 U.S. at 74.

The second interpretation of Petitioner's claim fares no better. Because Petitioner entered an unconditional guilty plea, he retained the right to challenge his conviction on appeal, such as by "appeal[ing] the voluntariness of his guilty plea or the

procedural and substantive reasonableness of his sentence." *Minjarez*, 667 F. App'x at 145. Petitioner was apprised of these rights during his rearraignment hearing. See Rec. Doc. 85 at 21:18-22:11. Moreover, the Court specifically informed Petitioner that his guilty plea waived "the right to put on a defense of any kind, like filing a motion to suppress the evidence . . . ." *Id.* at 21:5-6; *see also id.* at 18:19-22. Plaintiff affirmed his understanding of the rights he waived by entering an unconditional guilty plea. *See id.* at 22:6-23:14. In fact, Petitioner did appeal the substantive reasonableness of his sentence and the Fifth Circuit affirmed Petitioner's sentence. *See Minjarez*, 667 F. App'x at 145-46. Therefore, Petitioner's third claim for relief offers no indication the he suffered ineffective assistance of counsel with respect to entering his guilty plea or challenging his conviction on appeal.

New Orleans, Louisiana, this 22nd day of March, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE